Randall B. Bateman (USB 6482)
Lyndon R. Bradshaw (USB 15097)
DURHAM JONES & PINEGAR
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
(801) 415-3000
rbateman@djplaw.com; lbradshaw@djplaw.com; nbladen@djplaw.com

*Attorneys for Plaintiff Lone Star Promotions, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| LONE STAR PROMOTIONS, LLC, a Florida limited liability company <br><br> Plaintiff, <br><br> vs. <br><br> ABBEY LANE QUILTS, LLC, a Florida limited liability company; ABBEY LANE QUILTS, a Florida at-will partnership, and JANICE LILJENQUIST, an individual <br><br> Defendants. | **PLAINTIFF'S MOTION FOR TRO/PRELIMINARY INJUNCTION BARRING THE UTAH STATE DISTRICT COURT IN AND FOR WEBER COUNTY, UTAH FROM INTERFERING WITH THE COPYRIGHTS OF PLAINTIFF LONE STAR PROMOTIONS, LLC** <br><br> Case No. 1:18-cv-00073-DAK-EJF <br><br> Judge Dale A. Kimball <br><br> Magistrate Judge Evelyn J. Furse |

Plaintiff Lone Star Promotions, LLC ("Lone Star") hereby requests this Court to enter a temporary restraining order and preliminary injunction against the Utah State Second District Court In and For Weber County for violating 28 U.S.C. § 1338(a) and improperly interfering with the rights granted under the Copyright Act to Lone Star.

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 1

FACTS ......................................................................................................................... 3

ARGUMENT ............................................................................................................... 12

    A.    THE STATE COURT LACKS JURISDICTION OVER COPYRIGHT
        MATTERS ....................................................................................................... 12

    B.    THE STATE COURT LACKS JURISDICTION TO DETERMINE
        OWNERSHIP ................................................................................................... 14

    C.    THE COURT SHOULD ENJOIN INFRINGEMENT BY ALQ-LLC. ............... 18

    D.    THE COURT SHOULD ENJOIN THE VIOLATIONS OF OWEN'S
        RIGHTS UNDER THE THIRTEENTH AMENDMENT ................................... 19

    E.    LONE STAR IS ENTITLED TO INJUNCTIVE RELIEF ................................ 21

SUMMARY ................................................................................................................. 23

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aitkin, Hazen, et al. v. Empire Construction Co.,* 542 F.Supp. 252 (D. Neb. 1982) .................... 14

*Albright v. Board of Educ. Of Granite Sch. Dist.*, 765 F.Supp. 682 (D. Utah 1991) .................. 12

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ............ 15

*Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir.1981) ......................... 12

*Calicraft Distributors, LLC v. Castro*, 2015 WL 1789014, at *5-6 (C.D. Cal.
    Apr. 17, 2015) ................................................................................................................ 15

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166 (1989) ............... 15

*Ehat v. Tanner*, 780 F.2d 876 (10th Cir. 1985) ........................................................................ 18

*Harper & Row Publ's, Inc. v. Nation Enter., 723 F.2d 195 (2d Cir. 1983)*
    *rev'd on other grounds, 471 U.S. 539, 105 S.Ct. 2218  L.Ed.2d 588 (1985)* ......................... 18

*Heimerdinger v. Collins*, 2009 WL 1743764, * 3 (D. Utah June 18, 2009) ......................... 16, 22

*Henderson v. Coleman*, 7 So.2d 117 (1942) ............................................................................. 19

*JustMed, Inc. v. Byce,* 600 F.3d 1118 (9th Cir. 2010) ............................................................... 14

*McGrew v. Industrial Comm'n*, 85 P.2d 608 (1938) ................................................................ 19

*Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996) ........................................................................... 15

*MGB Homes, Inc. v. Ameren Homes, Inc.,* 903 F.2d 1486 (11th Cir. 1990) .............................. 14

*Microbiological Research Corp. v. Muna*, 625 P.2d 690 (Utah 1981) ...................................... 17

*Mike Smith Pontiac GMC, Inc. v. Mike Smith*, 486 So.2d 89 (Fla. Dist. App.
    5th 1986) ....................................................................................................................... 19

*Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir. 1984) ................................ 14

*Otero Savings & Loan Association v. Federal Reserve*, 665 F.2d 275 (10th Cir. 1981) ............. 12

*Resolution Trust Corp. v. Cruce*, 972 F.2d 1195 (10th Cir.1992) ............................................. 12

*Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839 (D.C. Cir. 2002) ...................... 15

*SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096 (10th Cir.1991) ............................................. 12

*Seneca–Cayuga Tribe v. State ex rel. Thompson*, 874 F.2d 709 (10th Cir.1989) ........................ 12

*Tri–State Generation v. Shoshone River Power*, Inc., 805 F.2d 351 (10th Cir.1986) ................. 12

*Watkins v. Chesapeake Custom Homes, L.L.C,* 330 F.Supp.2d 563 (D.Md. 2004) ..................... 14

*Weinstein Co. v. Smokewood Entertainment Group, LLC*, 664 F.Supp.2d 332
    (S.D.N.Y. 2009) .............................................................................................................. 17

*Woods v. Resnick*, 725 F.Supp.2d 809 (W.D. Wis. 2010) ......................................................... 17

**STATUTES**

17 U.S.C. § 101 .................................................................................................................... 14

17 U.S.C. § 102 .................................................................................................................... 18

17 U.S.C. § 103 .................................................................................................................... 18

ii

17 U.S.C. § 106 ............................................................................................... 13, 18, 21

17 U.S.C. § 201 ...................................................................................................... 14

17 U.S.C. § 301 ................................................................................................. passim

17 U.S.C. §204(a) .................................................................................................. 16

28 U.S.C. § 1338 .................................................................................................... 18

28 U.S.C. § 1338(a) ..................................................................................... 1, 12, 15, 22

## OTHER AUTHORITIES

Fla. Stat. 620.8801 ................................................................................................ 20

U.S. Constitution, Thirteenth Amendment ............................................................ 19

Utah Constitution, Article 1, Section 21 ............................................................... 19

SLC_3885880.1

## BACKGROUND

Lone Star is a single member Florida limited liability company which has been in the design business since 2007.  In 2008, Lone Star's owner Marcea Owen ("Owen") and Janice Liljenquist ("Liljenquist") decided to start an at will partnership selling quilt patterns and other products.  Liljenquist was to be in charge of fulfillment and record keeping, while Owen was to be in charge of design through Lone Star.  On May 5, 2008, Liljenquist filed the fictitious name registration with the State of Florida for the partnership under the name Abbey Lane Quilts (hereinafter "ALQ-Partnership").  In 2013, Liljenquist allowed the fictitious name registration to lapse and failed to obtain a business license for ALQ-Partnership.

Despite Liljenquist's failure to comply with Florida law, Owen and Liljenquist continued to operate ALQ-Partnership without a fictitious name registration or business license.  On April 2, 2017, however, Liljenquist notified Owen that Liljenquist was getting out of the business and provided two options, either the partnership would be closed or Owen would have to buy Liljenquist out for $50,000.  Owen was not agreeable to either option but the two women were unable to negotiate a resolution.  Liljenquist closed the credit cards on which the business operated, refused to attend tradeshows where the business' products were marketed, ignored requests to provide inventory, trade show props and copies of the partnership books to Owen and otherwise refused to work in the business.  After three weeks of unsuccessful attempts come to a resolution with Liljenquist, Owen gave up on the partnership and started a new company, 2 Abbey Lane, LLC.

Four months after Owen started her new company, Liljenquist and a limited liability company created by Liljenquist Abbey Lane Quilts, LLC ("ALQ-LLC") filed a lawsuit in the

1

Utah Second District Court in and for Weber County. The lawsuit falsely claimed that Abbey Lane Quilts was a Florida Limited Liability Company that had been in business for 9 years, and that Owen had improperly used its trade secrets, infringed its trademarks and otherwise violated her duties to the LLC.  Liljenquist and ALQ initially denied that the partnership had existed – even though it was Liljenquist who filed the fictitious name registration for the partnership in Florida.  After Owen filed her answer properly identifying the company as a Florida partnership and counterclaimed against Liljenquist, Liljenquist and ALQ-LLC promptly filed a motion for a preliminary injunction.

After Owen produced documentation demonstrating that the business had been a partnership and not an LLC, Liljenquist and ALQ-LLC changed their position and claimed that ALQ-Partnership had converted into ALQ-LLC.  During the hearing on the preliminary injunction, however, Liljenquist admitted that she had not followed any of the formalities required by Florida law for converting a partnership into an LLC.  Liljenquist also admitted that ALQ-LLC had never even had a bank account or received any checks.  Most importantly, Liljenquist admitted that the only reason for setting up ALQ-LLC was to get a temporary tax ID number for a trade show in California.

Despite the admissions of Liljenquist and her attorney during the hearing, the state court granted the preliminary injunction and ordered the original company back into business.  The object was allegedly to "maintain the status quo," even though neither Owen nor Liljenquist had worked in the original company for 10 months.  The preliminary injunction further barred Owen from using the patterns which had been sold by ALQ-Partnership and barred Owen from using the patterns which she/Lone Star had designed since Liljenquist quit the partnership.  The basis

2

for the injunction was that the patterns – which are sold to the public – are trade secrets. Moreover, the state court ordered Owen to continue to work in the business, all without the requirement of a bond.

The preliminary injunction caused 2 Abbey Lane, LLC to go out of business. It has also deprived Owen and Lone Star of income since February of 2018. Moreover, ALQ-LLC (not ALQ-Partnership) has taken the patterns designed by Lone Star and started selling them to the public under the ALQ-LLC name. The state court has left the injunction in place despite acknowledging in a September 14, 2018 hearing that the patterns were clearly not trade secrets.

Under federal law, the state court lacks jurisdiction to deprive Lone Star of the rights granted to it by the Copyright Act and is expressly barred from resolving what is really a copyright dispute. Moreover, the order compelling Owen to work in the company violates both the Utah and U.S. Constitutions.

### FACTS

1.     In 2008, Owen and Liljenquist formed a Florida at-will partnership which did business under the name of Abbey Lane Quilts (ALQ-Partnership). Liljenquist filed the fictitious name registration on March 5, 2008. (Ex. A, Florida Fictitious Name Registration).

2.     Owen was acting on behalf of Lone Star Promotions, L.L.C. ("Lone Star), a design company that Owen started in 2007, and which has been maintained with the State of Florida each year. (Ex. B, Florida Divisions of Corporations)(Ex. C, Declaration of Marcea Owen, ¶ 3).

3.     Liljenquist was aware that Owen was acting on behalf of Lone Star and more than $100,000 in checks were written identifying Lone Star on the face of the check. Liljenquist has

3

admitted that a copy of each of the checks was provided to her as the bookkeeper for ALQ-partnership.  (Ex. D, Checks)(Ex. E, February 12, 2018 Court Hearing Transcript, 113:6-24).  As the partnership's bookkeeper, Liljenquist would have had to enter each check into the partnership's books.

4.     As a single member LLC, Lone Star and Owen share a bank account. (Ex. C, ¶ 4).

5.     Owen was the chief designer and sewed the quilts.  (Ex. F, Deposition of Janice Liljenquist, 107:4-7). Liljenquist was in charge of packaging and fulfillment for the partnership. (*Id.* at 29:1-7).  Both participated in trade shows and the like. (*Id.* at 132:9-13).  Virtually all of the patterns sold by ALQ-Partnership were patterns designed by Owen/Lone Star. (*Id.* at 107:7).

6.     Liljenquist allowed the fictitious name registration to expire in 2013 (Ex. A). Liljenquist also failed to get a business license from 2013 to 2017.  (Ex. F, 75:5-20).

7.     In December of 2016, Janice Liljenquist formed a Florida Limited Liability Company using the name Abbey Lane Quilts ("ALQ-LLC").  (Ex. E, 109:21-24).  There was no agreement that ALQ-LLC would succeed ALQ-Partnership (Ex. F at 38:3-6).  No conversion documents were prepared or filed with the State of Florida. (Ex. F at 35:3-7).

8.     No assignment documents transfer any assets of ALQ-Partnership to ALQ-LLC, no funds were ever provided to ALQ-Partnership, and ALQ-LLC did not take on any of the liabilities of ALQ-Partnership. (Ex. F, 35:8- 38:6).

9.     As of February 12, 2018, ALQ-LLC had never even opened a bank account or changed the ALQ-Partnership account to the ALQ-LLC.  (Ex. F, 81:25-82:6).

10.     On or about April 2, 2017, Liljenquist wrote to Owen and stated that:

After much thought, prayer and counseling with my family, I have made the difficult decision to get out of Abbey Lane Quilts.  I make this decision with a sad heart but do so

4

to preserve my marriage, my relationship with my children and for my own emotional health and well-being.

(Ex. G).  Liljenquist made two proposals for her exit from the business – (1) the partnership would cease to function and the quilts and furniture would be sold, or (2) Owen would pay Liljenquist $50,000 and be allowed to keep running the business.  (*Id*.)

11.     Because Liljenquist's proposals were not acceptable, Owen made counter offers to Liljenquist. (Complaint, ¶ 17).  Liljenquist failed to respond (Ex. F, 170:4-15). [1]

12.     While Owen was attempting to negotiate a buyout of Liljenquist, Owen attempted to keep the business operating.  (Ex. F, 149:3-8).  Owen updated contact information for customers and distributors.  Liljenquist, however, (1) refused to turn over the inventory she had, (2) refused to deposit more than $3,000 in checks to the partnership she had received for past orders, (3) withdrew nearly $13,000 from the company's bank accounts, (4) closed the credit cards which the company used as lines of credit without notice to Owen, and (5) refused to send business records to Owen.  (Ex. F, p. 63:19-65:17, 66:9-15; 91:20-23; 94:1-8; 170:16-171:9).

13.     Liljenquist also ceased doing work in the partnership and stopped (1) selling product, (2) sending orders, (3) sending product to Owen, (4) dispensing funds to Owen, (5) developing patterns, (6) participating in trade and retail shows, and (7) ceased all communication with Owen by telephone and in person. (Ex. F, 66:6-67:1, 76:25-77:8, 105:23-25, 106:17-107:3).

---

[1] Liljenquist has repeatedly insisted that the only two options are to either pay her $50,000 or to close the business and cease using any of the patterns, and has refused multiple alternative offers. (Ex. F, 62:11-63:21, 70:5-71:2) "Q (By Farrell) Your position throughout this litigation, from April 2 of 2017, until today, is that your divested from the company for $50,000 or the company shuts down and the patterns are never sold again, correct?  A Yes")(Ex. F, 165:14-20).

14.     After it became clear that Owen and Liljenquist could not come to a resolution, Owen quit and on April 24, 2017 started a new business 2 Abbey Lane, a Utah limited liability company.  (Ex. I, Utah Department of Corporations).

15.     From April 2017 to February of 2018, Liljenquist did not speak to Owen, and did not do anything in ALQ-Partnership.  (Ex. F, 71:16-73:4; 96:18-20; 126:19-21).  After Owen informed distributors to contact Owen in the future, Liljenquist made no effort to contact distributors to change the contact back to Liljenquist.  (Ex. F, 111:12-17).

16.     Pursuant to Florida Statute 620.8803, Owen then liquidated the ALQ-Partnership inventory in her possession and kept records of those sales.  (Ex. C, ¶ 13).

17.     Liljenquist refused to turn over the inventory in her possession, which was the majority of the partnership's assets, failed to liquidate the remaining inventory of ALQ-Partnership, and allowed the Partnership storage unit to be foreclosed on.  (*Id*. at ¶ 14; Ex. K, Florida Public Notices—Notice of Sale, July 14, 2017).

18.     Four months after Owen left and started her new business, Liljenquist and ALQ-LLC filed a lawsuit against Owen and 2 Abbey Lane, LLC pursuant to Florida Stat. 605, the Florida Revised Limited Liability Company Act.  (Ex. L, State Complaint).  In response, Owen filed a counterclaim asserting claims for conversion, breach of duty as a partner, wrongful disassociation, breach of partnership agreement, unjust enrichment, injunctive relief, access to books and records of the partnership, and expulsion of partner.  (Ex. M, State Answer and Counterclaim).

19.     In their Answer to Counter-Complaint, Liljenquist and ALQ-LLC (1) denied that Owen and Liljenquist had started a partnership in 2008, (2) repeatedly denied being a partner in

6

the partnership, (3) denied that the fictitious name registration had been filed, (4) denied that Owen and Liljenquist were the owners, (5) denied that the fictitious name registration had expired in 2013, and (6) denied that Liljenquist had partnership assets in her possession (Ex. N, State Answer to Counter-Complaint,  ¶¶ 4-8, 47, 62).  Liljenquist made these representations even though (1) it was Liljenquist that signed the fictitious name registration filings on May 5, 2008, which lists Owen and Liljenquist as owners of the name Abbey Lane Quilts; (2) ALQ-LLC was not established until December 21, 2016; and (3) Liljenquist claimed that she and Owen were "partners 50-50" as late as April 12, 2017.  (Ex. A, Ex. H, Liljenquist email 4/11/2017).

20.     For three months Liljenquist and ALQ-LLC argued that Owen and Liljenquist had been operating a limited liability company together since 2009 and made no attempt to amend their pleadings or the motion seeking an Injunction.  (Ex. O, Application for Temporary Restraining Order and Motion for Preliminary Injunction, Statement of Facts, ¶ 2).

21.     In opposition to Liljenquist's and ALQ-LLC's TRO motion, Owen and 2AL-LLC produced documentation showing that Liljenquist had established the partnership in 2008 and that ALQ-LLC had not been set up until December 2016.  (Ex. P - Memorandum in Opposition to Motion for Preliminary Injunction).

22.     In their reply, Liljenquist and ALQ-LLC changed their position asserted that ALQ-Partnership did exist, but had converted into the LLC.  Liljenquist provided a declaration claiming that "Owen and I both agreed to convert Abbey Lane Quilts into an LLC in December of 2016 when I believed that it was required in order for us to enter a trade show in California to get a tax ID."  (Ex. Q - Reply Memorandum in Supporting Plaintiff's Motion for Preliminary

7

Injunction; Declaration of Janice Liljenquist in Support Reply Memorandum in Supporting

Plaintiff's Motion for Preliminary Injunction, ¶ 3).

23.     At the Injunction hearing, however, Liljenquist admitted that she had not done

anything in furtherance of the LLC since December 21, 2016.  Liljenquist also admitted that

ALQ-LLC had not assumed the liabilities of the ALQ-Partnership, had not followed any of the

requirements under Florida law for a conversion, and that the sole purpose for setting up the LLC

was to get registered for a single trade show in California.  (Ex. E, 135:8-138:10).

24.     ALQ-LLC's counsel represented to the Court that the Injunction would not harm

Owen because Owen would receive her 50% share and any revenue over $20,000.  (Ex. E,

213:2-16).  However, ALQ-LLC has failed to pay any revenue or profits to Owen since the

injunction went into effect on February 12, 2018.

25.     The state court indicated that it would grant the motion for preliminary injunction

and specifically directed that everything go back to the "original company" and that the intent

was to maintain the status quo.  (Ex. E, 210:13-19, 213:12-16; 214:1-5).

26.     The Court further instructed that there would be no selling without approval from

both sides.  (Ex. E, 214:13-16).

27.     On March 12, 2018, the Court entered the Injunction requiring the women to

work together even though (1) Liljenquist had expressed her will on April 2, 2017 to leave

Abbey Lane Quilts "to preserve my marriage, my relationship with my children and for my own

emotional health and well-being"; (2) Owen left on April 24, 2017 to start a new company;

(3) neither woman had worked in the business for nearly 10 months; and (4) the Court

acknowledged that "Neither of them want to work with each other." (Ex. E, 210:13-19, 213:12-16)(Ex. J, Order Re: Motion for Preliminary Injunction).

28.     Following entry of the order, Liljenquist and ALQ-LLC relaunched the company, but did so with ALQ-LLC instead of with the original company as instructed by the Court. (Ex. R, Bank Statement, Invoices and Check).  Liljenquist and ALQ-LLC required Owen to assist them in opening a bank account for ALQ-LLC and all funds have been deposited in that account.  (Ex. C, ¶ 18).

29.     In her April 2018 deposition, Liljenquist admitted that there was no agreement that ALQ-LLC would succeed ALQ-Partnership.  She also admitted that "the sole purpose for creating [the LLC] was to get a tax ID for the California Road Show" and that no conversion documents were prepared or filed to convert the partnership.  (Ex. F, 32:10-15, 35:3-7, 38:3-6).

30.     Liljenquist further admitted that there were no assignment documents to transfer any assets of ALQ-Partnership to ALQ-LLC, that ALQ-LLC did not take on any of the liabilities of ALQ-Partnership, and that ALQ-LLC had never even had a bank account prior to the Injunction hearing.  (Ex. F, 35:8- 38:6, 81:25-82:6).

31.     On May 15, 2018, the Court compelled Owen to turn over copies of the patterns which Owen/Lone Star authored after Owen left in April 2017.  Despite the instructions of counsel for Owen and counsel for Lone Star that Liljenquist and ALQ-LLC were not to modify or sell the new patterns, ALQ-LLC started selling the patterns under ALQ-LLC's own name. (Ex. S, Bateman Letter).  This was done in spite of the express instructions of the Court that there would be no selling "without approval from both sides."  (Ex. E, 214:14-15).

32.     Since entry of the Injunction and the establishment of ALQ-LLC as the entity selling the assets previously owned by ALQ-Partnership, Liljenquist and ALQ-LLC have admitted on several occasions that ALQ-LLC is not the conversion of ALQ-Partnership.  For example, in their memorandum opposing Defendants' 12(b) motion, Liljenquist and ALQ-LLC assert "This is a business dispute between Janice Liljenquist and Marcea Owen, two partners in a quilting partnership known as Abbey Lane Quilts ("ALQ-Partnership" or the "Partnership")." Liljenquist and ALQ-LLC further assert that both ALQ-LLC and ALQ-Partnership have standing.

33.     In seeking a stay of Defendants' lawsuit in Florida, Liljenquist's and ALQ-LLC's counsel represented to the Court:

> To clarify on the role of the LLC, the LLC was formed -- it was formed because a trade show in California advised one -- I believe it was Miss Liljenquist when she called up inquiring about how to -- how to participate in the trade show and they said that she needed to have a business entity.  So she formed the LLC. It was never -- it was never supposed to be a replacement for the partnership.  There is no contest that the LLC is not the partnership.

(Ex. T, Hearing on Motion for Stay, August 20, 2018, 18:2-6).  Plaintiff's counsel further emphasized:

> there was never any intention intention[sic] to disregard the partnership. So the LLC I submit is a red herring.  I mean, the LLC is just a thing that they have but it is not the partnership.

(Id. at 18:9-13).

34.     Moreover, while the Utah action purportedly seeks dissolution of ALQ-LLC, Plaintiff's counsel represented to the Florida Court as follows:

> It is not -- I mean, all things being equal, my client would prefer to keep the LLC. They would prefer not to dissolve the LLC if they don't have to and in Utah alternative pleading -- pleadings are permitted.

(Id., 22:8-14).

35.     Since February 12, 2018, Lone Star has been deprived of its rights under the Copyright Act, 17 U.S.C. § 101 et. seq. in all of its quilting designs and has been forced to allow ALQ-LLC to copy its designs and misrepresent to the public that they are the property of ALQ-LLC.  Additionally, Owen has been unconstitutionally forced to remain as a partner in ALQ-Partnership – thereby preventing Owen from being able to provide design services for Lone Star. (Ex. C, ¶ 18).

36.     After Owen left ALQ-Partnership, she purchased display space at various trade shows, including Quiltcon in February 2018, Spring Market in May 2018, which she has had to cancel due to the Court's order.  Owen has also had to cancel multiple teaching events and trunk shows due to the state court's order.  In 2017 Owen paid $2500 for attendance to Quilt Festival in November 2018, but cannot attend due to the injunction.  (Ex. C, ¶ 24).

37.     Since the entry of the state court's injunction, sales of patterns by Liljenquist and Owen have dropped by more than 66 percent due to Liljenquist's refusal to participate in trade shows and trunk shows and otherwise market the company's products.  (Ex. C, ¶ 21).

38.     On August 27, 2018, Owen filed a motion to vacate the injunction based on the violation of federal law, the constitutional issues and Liljenquist's and ALQ-LLC's lack of standing.  (Ex. U, Motion of Defendants to Vacate Preliminary Injunction under Rule 65A, For Order Requiring Return of Property, or in the Alternative, for Posting of a Bond and for Attorneys' Fees – duplicative attachments have been omitted). On September 14, 2018, the state court issued an oral order staying the Utah action pending resolution in Florida and maintaining the Injunction in place.

## ARGUMENT

The Tenth Circuit requires a movant to establish four elements as the basis for issuance of a TRO or preliminary injunction: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.1991); *Seneca–Cayuga Tribe v. State ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989); *Tri–State Generation v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986); accord *Albright v. Board of Educ. Of Granite Sch. Dist.*, 765 F.Supp. 682, 686 (D. Utah 1991).

When the first three elements are clearly satisfied, the Tenth Circuit has indicated that a more lenient "fair ground for litigation" standard should be substituted for the prerequisite of "a substantial likelihood that the moving party will prevail on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir.1992); *Otero Savings & Loan Association v. Federal Reserve*, 665 F.2d 275, 278 (10th Cir. 1981). If plaintiff cannot clearly demonstrate that the last three elements are satisfied, then the requirement of substantial likelihood of success on the merits is reviewed under the traditional standard that requires plaintiff to show a reasonable probability of success. *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 261 (10th Cir. 1981).

## A.   THE STATE COURT LACKS JURISDICTION OVER COPYRIGHT MATTERS

Not only does a state court lack jurisdiction over copyright matters, it is expressly barred from addressing such issues.  28 U.S.C. § 1338(a) states, in part:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.

Under the Copyright Act, a copyright owner is given the exclusive rights "(1) to reproduce the copyrighted work in copies . . .; (2) to prepare derivative works based upon the copyrighted work;" and "(3)   to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."   17 U.S.C. § 106.  Moreover, the Copyright Act specifically preempts any state law claim which substantially covers rights similar to those of a copyright.  17 U.S.C. § 301 states:

all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

The state court's injunction is defective to the extent that it prohibits Owen (the sole member/manager of Lone Star) and Lone Star from exercising one or more of the of the exclusive rights provided under the Copyright Act.  Not only does the state court's injunction bar Owen/Lone Star from using the works they created and one of which Lone Star has a copyright registration for.  Rather the state court's injunction affirmatively requires those works created after Liljenquist and Owen parted ways to be turned over to ALQ-LLC – which is now using those works without Owen/Lone Star's permission.  Thus, the state court's preliminary injunction is improperly intruding on federal law and must be enjoined from continuing.  The injunction has already forced 2 Abbey Lane, LLC out of business and Owen has received no compensation for her compelled work in the business - (and without so much as a bond to go

13

against for the harm done).  Thus, the state court should be enjoined against further interference with Lone Star's copyrights.

## B.     THE STATE COURT LACKS JURISDICTION TO DETERMINE OWNERSHIP

Liljenquist and ALQ-LLC argued to the state court that ALQ-LLC is the owner of the rights in the patterns.  However, there is no basis under federal law for such a conclusion.  Ownership of the copyrights in the patterns is dictated by Section 201 of the Copyright Act.  17 U.S.C. § 101 et seq.  "Copyright in a work protected under this title **vests initially in the author or authors of the work**."  17 U.S.C. § 201 (Emphasis added).  ALQ-LLC and Liljenquist have admitted that Owen was the principle designer of its patterns.  (Ex. F, 107-4-7).  While Liljenquist claims that she provided input on the designs, she has failed to produce any evidence of what portions of the designs she created.   Simply providing input and making suggestions is not a basis for claiming copyright ownership.  *See MGB Homes, Inc. v. Ameren Homes, Inc.,* 903 F.2d 1486, 1493 (11th Cir. 1990); *Aitkin, Hazen, et al. v. Empire Construction Co.,* 542 F.Supp. 252, 259 (D. Neb. 1982); *Watkins v. Chesapeake Custom Homes, L.L.C,* 330 F.Supp.2d 563, 571-73 (D.Md. 2004).

The only way that ALQ-LLC could be the owner of the copyrights in the patterns is if the patterns were created as works made for hire, or ALQ-LLC obtained an assignment from the author.  ALQ-LLC has produced no assignment and any claim of the patterns as works made for hire requires federal court resolution.  "Although a complaint may not state a Copyright Act claim on its face, federal jurisdiction may be appropriate if resolution requires application of the work-for-hire doctrine of the Copyright Act...."  *JustMed, Inc. v. Byce,* 600 F.3d 1118, 1124 (9th Cir. 2010); *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1473 (9th Cir. 1984) (a

court may look beyond facts pleaded in a complaint to ascertain facts that would have appeared in a "well pleaded" complaint), overruled on other grounds by *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).  *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 845-46 (D.C. Cir. 2002) ("[A] dispute that turns on whether a copyrighted work was created independently or as a 'work made for hire' is an ownership dispute that unquestionably arises under the Copyright Act… subject matter jurisdiction under § 1338(a) is not lost merely because a contract ownership dispute may be implicated."); *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (federal subject matter jurisdiction existed, at least in part, because the application of the work-for-hire doctrine required construction of the Copyright Act); *Calicraft Distributors, LLC v. Castro*, 2015 WL 1789014, at *5-6 (C.D. Cal. Apr. 17, 2015) ("[W]here the resolution of an action turns on the work-for-hire doctrine, federal court jurisdiction is proper even absent a claim for relief under the Copyright Act.").  If ALQ-LLC wants to bar Owen, Lone Star or any other entity from making copies of the patterns, they must do so in federal court.  They cannot use a state court in violation of federal law.  28 U.S.C. § 1338(a).

Liljenquist and ALQ-LLC also claim ownership based on the argument that ALQ-Partnership paid for the development of the works.  Such an argument has been roundly rejected since the Supreme Court decided *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166 (1989).  Simply because a person or entity pays for a work does not make the work made for hire.  Unless the person was an employee or is otherwise subject to control by the purported work for hire owner, the copyright vests in the person who created of the work.  *Id.* at 490 U.S. 752, 109 S.Ct. 2179.

15

While ALQ-LLC's counsel argued repeatedly that there is a legal presumption in both Utah and Florida that products are owned by the partnership, state law cannot change the Copyright Act.  17 U.S.C. § 301.  Moreover, this Court has specifically addressed the ownership of a work created by a partner in *Heimerdinger v. Collins*, 2009 WL 1743764, * 3 (D. Utah June 18, 2009).  Judge Nuffer noted that a partner in a partnership is the proper copyright owner because a 50/50 partner cannot be deemed an employee for sake of a work for hire analysis. Judge Nuffer specifically rejected similar arguments to those raised by Liljenquist and ALQ-LLC:

> Further, the facts most favorable to Collins's position do not support any of the control required for a finding of employee status. Collins's characterization of both parties as "employees of the partnership" is insignificant in determining whether Heimerdinger actually was an employee. Collins alleges that in April 1999 the parties formed a partnership in which they each had a 50% interest, without a formal agreement, to create a web site to sell Heimerdinger's works. Heimerdinger paid all partnership costs in exchange for publicity from the web site, and the parties split profits from the web site 50/50. Heimerdinger authored works for the partnership using partnership resources, and Heimerdinger promised that the partnership would be the exclusive distributor.
>
> *5 These allegations, even if true, provide no support for the conclusion that the partnership had any "right to control the manner and means by which [Heimerdinger's works were] accomplished" under the Supreme Court's standard. Collins's 50% partnership interest was insufficient to give the partnership a right to control the manner and means of Heimerdinger's authorship.

(*Id.* at *4-5)(citations omitted).  Thus, Owen/Lone Star are the initial owners of the copyright in the plans which they designed.  For ALQ-LLC to be the owner of the copyrights and to have a legitimate basis for barring Owen and/or Lone Star from using the copyrights would require that the ownership had been transferred.  A transfer of copyright ownership requires an instrument of conveyance.  17 U.S.C. §204(a).  In a case similar to *Heimerdinger,* the District of Wisconsin noted that the party alleging work for hire also failed to prove ownership by assignment:

16

To be valid, an assignment under § 204(a) must "clearly identify the deal and its basic parameters." *Weinstein Co. v. Smokewood Entertainment Group, LLC*, 664 F.Supp.2d 332, 342 (S.D.N.Y. 2009). Even as between the copyright owner and the alleged licensee, a particular writing must reflect a "clear and equivocal" intention on the part of the copyright owner to transfer ownership. Id. at 341. "The purpose of the signed writing requirement is to ensure that the copyright owner deliberately transfers is ownership interest and that the owner does so in way that provides the parties with a clear guide to their rights and responsibilities." *Id*.

*Woods v. Resnick*, 725 F.Supp.2d 809, 826 (W.D. Wis. 2010).

ALQ-LLC failed to produce any documentation that it has any rights to the designs at issue or claim that the designs – which are sold to the public – are trade secrets. Such a position is meritless because something cannot be a trade secret when it is being sold to the public.

*Microbiological Research Corp. v. Muna*, 625 P.2d 690, 696 (Utah 1981) ("The threshold issue in every case is whether, in fact, there is a trade secret to be misappropriated. The secret is of value only so long as it remains a secret. The burden is upon the plaintiff to prove its existence as a secret, and there is no presumption in his favor."). In fact, at a hearing on September 14, 2018, even the state court acknowledged that the patterns cannot be trade secrets. Rather than vacating its injunction or considering a pending motion to vacate the injunction, however, the state court stayed the case with the injunction in place for further proceedings in the state court in Florida and provided Liljenquist and ALQ-LLC an open extension to respond to the motion to vacate until the stay has been lifted. In the present case, not only were the designs of the patterns not trade secrets, they were not even owned by ALQ-LLC (or even ALQ-Partnership for that matter). The pattern designs are the copyrighted subject matter of Lone Star and the state court had no jurisdiction to bar Owen/Lone Star from using their own property.

The injunction states "[t]hat Defendants, and each of them, refrain from engaging in misappropriating Plaintiff's trade secrets, including, but not limited to, **using the patterns** . . ."

17

(emphasis added).  "Under section 301, a state common law or statutory claim is preempted if: (1) the work is within the scope of the "subject matter of copyright" as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106. *See Harper & Row Publ's, Inc. v. Nation Enter.*, 723 F.2d 195, 199–200 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). . . ." *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985).  In *Ehat*, the court found than a state misappropriation claim regarding using another's written materials was preempted.  *Id.*  Prohibiting Owen or Lone Star from using patterns which Lone Star created based on the allegation that the patterns are ALQ-LLC's trade secrets interferes with Lone Star's copyrights and violates 28 U.S.C. § 1338 and 17 U.S.C. § 301.  The ability to control the use of Lone Star's designs is outside the jurisdiction of the state court and this Court should enjoin further interference with Lone Star's federal protected property.

The state court's action has effectively put Owen out of employment and neither Owen nor Lone Star have received income for the last 8 months.  While Liljenquist purports to be running the company on behalf of ALQ-LLC, she has not dispensed any funds to Owen, while at the same time selling the designs previously sold by ALQ-Partnership and the 10 designs Owen/Lone Star created after Owen and Liljenquist parted ways.  The state court's actions violate 28 U.S.C. §1338(a) and 17 U.S.C. § 301 and should be enjoined.

## C.      THE COURT SHOULD ENJOIN INFRINGEMENT BY ALQ-LLC.

ALQ-LLC has no legal claim to the use of the 10 new plans which Owen created after she parted ways with Liljenquist.  ALQ-LLC is not even a conversion of the partnership – as repeatedly admitted by Liljenquist.  Moreover, the current plans were created after the

18

partnership collapsed in April of 2017 and Defendants were specifically told that they were not

allowed to use the plans.  Rather, ALQ-LLC misused the state court to compel production of the

digital copies of the Lone Star's new patterns and now has commenced selling Lone Star's plans

as if they were the creation of ALQ-LLC.  Attempts to address the situation with the state court

have been unfruitful, to say the least.

 To date, Lone Star has only received one copyright registration certificate for the 10 new

plans – A Tale of 2 Gnomes.  It is requested that the Court enjoin ALQ-LLC from infringement

of that work and that the injunction be expanded to each additional work as the copyright

registrations are received.

## D.   THE COURT SHOULD ENJOIN THE VIOLATIONS OF OWEN'S RIGHTS UNDER THE THIRTEENTH AMENDMENT

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

(U.S. Constitution, Thirteenth Amendment).

> Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within this State.

(Utah Constitution, Article 1, Section 21)

 The state court's Injunction is unconstitutional as it effects involuntary servitude on

Owen throughout the duration of the litigation.  *See McGrew v. Industrial Comm'n*, 85 P.2d 608,

610 (1938), accord *Henderson v. Coleman*, 7 So.2d 117, 121 (1942)(en banc)("We are not

advised of any rule of law under which any man in this country will be forced to serve with his

labor any other man whom he does not wish to serve."); *See also Mike Smith Pontiac GMC, Inc.*

*v. Mike Smith*, 486 So.2d 89, 90 (Fla. Dist. App. 5th 1986).  The Court cannot compel a person to

work in a business that the person does not wish to work in.  The Injunction, however, affects involuntary servitude on Owen for the remainder of the litigation and compels her to be a partner in a business does not want to be part of, with person she has no desire to work with, and with no guarantee of compensation.

ALQ-Partnership was a partnership at-will, which was dissolved when either partner expressed a will to leave the Partnership.  Fla. Stat. 620.8801.  In the present case, both women expressed a will to leave the Partnership in April of 2017.  Neither woman was subject to a non-compete agreement or any other limitation on the ability to compete in the marketplace.  There is legal no basis on which the state court can compel Owen to continue to work in ALQ-Partnership, let alone to cooperate with the running of ALQ-LLC, an entity which had never done business before the order. The Injunction is unconstitutional and must be vacated.

Lone Star is damaged by the state court's unconstitutional order because it, as a single member LLC, is effectively barred from using its own designs by the state court's order.  In fact, Liljenquist and ALQ-LLC sought contempt sanctions against Lone Star for not turning over its digital files of its copyrighted designs and then withdrew the motion as Lone Star's counsel was presenting its argument to the state court on why the injunction was improper.  Likewise, Owen cannot create new designs for Lone Star which Lone Star could then license, because doing so would be in competition with ALQ-Partnership (to the extent it can be said to even be in business) – a partnership which the state court has effectively forbidden Owen from withdrawing from.  Rather, Owen is compelled to work with Liljenquist for no pay as all of Owen's interest in ALQ-partnership has been surreptitiously transferred to ALQ-LLC against her will.

20

**E.      LONE STAR IS ENTITLED TO INJUNCTIVE RELIEF.**

Lone Star is entitled to injunctive relief against the state court's order.  Lone Star is suffering irreparable injury because the state court is improperly interfering with its rights granted under 17 U.S.C. § 106.  Lone Star is entitled to the exclusive right to reproduce the copyrighted works, to prepare derivative works and to distribute copies.  *Id.*  Instead, the state court has stripped Lone Star of these rights and forced Lone Star to turn over its digital files to the Defendants so that the Defendants can use Lone Star's copyrighted works at the same time the state court prohibits Lone Star from doing so.

Lone Star has received no income for more than 8 months and the state court has declined to require Liljenquist and ALQ-LLC to post a bond against which Lone Star or Owen could obtain any relief.  Moreover, ALQ-LLC's sales are down more than 66% of what they were under the ALQ-Partnership – making it unlikely that ALQ-LLC will have any revenue to compensate Lone Star for its damages.  ALQ-LLC does not attend trade shows, or trunk shows and does very little marketing.  Rather Liljenquist is running ALQ-LLC like a hobby – just enough to keep it going, but not enough to make any reasonable profit.   The state court lacks jurisdiction to order Owen or Lone Star not to use Lone Star's designs.  Therefore, Lone Star is suffering irreparable harm do to the state's court's violation of 28 U.S.C. § 1338(a) and 17 U.S.C. § 301.

Lone Star and Owen are being further harmed by the state court's unconstitutional order turning Owen into an indentured servant of ALQ-LLC.  Owen is forced to remain as a partner/member and actively assist the company in violation of the Thirteen Amendment despite Liljenquist's inability to effectively run the company.  Owen cannot design additional designs for

Lone Star and Lone Star cannot market its designs because doing so would be making Owen compete with the partnership/LLC in violation of state law – even though state law allows Owen to quit at any time without further obligation to the entities.

The injury to Lone Star far outweighs any injury to Defendants.  Lone Star did not seek to prevent Defendants from selling the patterns which were created prior to Liljenquist and Owen parting ways.  Liljenquist is able to continue selling those patterns as part of her hobby business and she has no need to sell the new patterns to do so.  Liljenquist can also continue her hobby business without Owen having to be a part of the business.  Granting the requested relief would allow Owen and Lone Star create and sell new patterns so that Owen can support her family, and to sell the patterns previously created by Lone Star.

The injunction would clearly not be adverse to the public interest.  It is in the public interest that state courts abide by federal law and not attempt to enjoin copying under the guise of a "trade secret" when the products have been sold to the public.  Congress passed both 17 U.S.C. § 301 and 28 U.S.C. § 1338(a) with the clear intent that state courts not interfere with copyright owners using their protected designs.  Granting the injunction would merely enforce well established federal law.

Finally, there is a substantial likelihood that Lone Star will prevail on the merits.  The only decision from this Court to specifically address the issue found that a 50/50 partner who creates a work is the author and owns the copyright absent an assignment.  *Heimerdinger v. Collins*, 2009 WL 1743764, * 3 (D. Utah June 18, 2009).  There are no assignments or even written license agreements by which Defendants can claim ownership or even a right to use the patterns.   Best case scenario, Defendants may be able to show that Liljenquist is a joint author of

22

a few of the patterns – even though to date Defendants have produce no evidence showing that Liljenquist helped author the designs.  If such were the case, Lone Star would still be entitled to use the works.  Thus, there is no legal basis for the state court's injunction barring Owen and/or Lone Star from using the designs they created.

Owen (and Lone Star) are effectively handcuffed to a slowly dying business in violation of the Copyright Act and in violation of the Thirteen Amendment to the U.S. Constitution and Clause 21 of the Utah Constitution.  The Temporary Restraining Order and Preliminary Injunction should be granted.  Moreover, as the requested relief still put Lone Star and Owen in a position less than they would be had the injunction not been granted, no bond should be required.

## **<u>SUMMARY</u>**

The state court lacks jurisdiction to decide the ownership of the patterns and lacks authority to bar Owen or Lone Star from using those patterns they own however they see fit. Moreover, the state court lacks any legal basis for compelling Owen to continue being a partner in a business that both partners quit 18 months ago.  The intervention of this Court is necessary to compel the state court to comply with federal law and the U.S. Constitution.

DATED:  October 4, 2018.

DURHAM JONES & PINEGAR

/s/ Randall B. Bateman
Randall B. Bateman
Lyndon Bradshaw

111 South Main Street, Suite 2400
Salt Lake City, UT 84111

*Attorneys for Plaintiff  Lone Star Promotions, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of October, I caused a true and correct copy of

the foregoing PLAINTIFF'S MOTION FOR TRO/PRELIMINARY INJUNCTION BARRING

THE UTAH STATE DISTRICT COURT IN AND FOR WEBER COUNTY, UTAH FROM

INTERFERING WITH THE COPYRIGHTS OF PLAINTIFF LONE STAR PROMOTIONS,

LLC to be filed with the Clerk of the Court via CM/EFC, and served via the CM/ECF email

system to the following:

> Bruce Pritchett
> Ryan Rudd
> Nathan Hoopes
> THE RUDD FIRM, P.C.
> 10150 Centennial Pkway, Suite 150
> Sandy, UT  84070
> bpritchett@ruddfirm.com

And that a copy was served via U.S. Mail as follows:

> The Honorable Joseph M. Bean
> 2nd Judicial District Court – Weber County
> 2525 Grant Avenue
> Ogden, UT  84401

/s/ Randall B. Bateman_____

24