IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LONE STAR PROMOTIONS, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>ABBEY LANE QUILTS, LLC; ABBEY LANE QUILTS; and JANICE LILJENQUIST,<br><br>          Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:18CV73DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Lone Star Promotions, LLC's Motion for TRO/Preliminary Injunction Barring the Utah State District Court In and For Weber County, Utah From Interfering With the Copyrights of Plaintiff Lone Star Promotions, LLC. The parties fully briefed the motion on an expedited basis, and, on October 29, 2018, the court held an expedited hearing on the motion. At the hearing, Plaintiff was represented by Randall B. Bateman, and Defendants were represented by Bruce Pritchett and Ryan A. Rudd. The court heard argument from counsel for both parties and took the motion under advisement.[1] After the hearing, Lone Star asked for leave to file supplemental briefing in response to arguments Defendants raised at the hearing. The court granted Lone Star leave, and Lone Star filed a supplement brief. After carefully considering the parties' arguments, as well as the law and facts

---

[1] At the hearing, the parties agreed to a stipulation that Lone Star stated alleviated its claim under the Thirteenth Amendment to the United States Constitution. Therefore, the court does not address that claim in this order.

relevant to the motion, the court enters the following Memorandum Decision and Order denying Plaintiff's motion for preliminary injunctive relief.

## FACTUAL BACKGROUND[2]

Most of the following facts are taken from Lone Star's Amended Complaint and the Declaration filed by Defendant Janice Liljenquist. Lone Star is a single member Florida limited liability company with its principal place of business in North Ogden, Utah. Lone Star's owner and single member is Marcea Owen. In 2007, Marcea Owen started Lone Star to perform web design services and other design services.

In 2008, Owen and Janice Liljenquist started a partnership selling quilt patterns and other products. Owen and Liljenquist now dispute what work each performed for the partnership, but Owen made a statement to a blog during the partnership that she was a little better at design and colors and Liljenquist was a little better at sewing and pattern writing. Owen and Liljenquist formed Abbey Lane Quilts as a Florida at-will general partnership in 2008. The state registration listed Owen and Liljenquist as the owners.

Lone Star claims that Owen and Liljenquist marketed quilting patterns which included designs Owen created as owner of Lone Star. Liljenquist argues that the designs were a collaborative effort, citing Owen's statement made during the partnership that "we both throw in our two bits into each other's jobs, so it takes both of us to come up with a pattern." Lone Star,

---

[2] The court notes that the findings of fact and conclusions of law made by a court in deciding a preliminary injunction motion are not binding at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992), *overruled on other grounds, Systemcare, Inc. v. Wang Labs Corp.,* 117 F.3d 1137 (10th Cir. 1997) (recognizing that "the district court is not bound by its prior factual findings determined in a preliminary injunction hearing.").

however, contends that Liljenquist's contributions did not include any protectable expression to the patterns. Thus, Lone Star claims that it is the author of each quilting design sold by Abbey Lane Quilts, with the exception of one. Lone Star also alleges that it granted Abbey Lane Quilts an oral license to use Lone Star's designs, which amounted to more than 150 pattern designs.

Defendants, however, claim that Liljenquist and Owen are joint authors of the designs and that Abbey Lane Quilts has an exclusive oral license to the copyrighted works. Liljenquist states that both she and Owen had to agree in order to finish a pattern, the quilting community viewed them as joint designers, Lone Star had no control over the design or creation of the quilting patterns, and she had never heard of an oral license between Lone Star and Abbey Lane Quilts prior to April 2017, when a dispute between Owen and Liljenquist arose. Liljenquist also contends that Lone Star was only a tax shelter Owen used so she could write off business expenses, but it never owned any rights to the patterns. Liljenquist submitted the past four years of balance sheets and tax returns for Abbey Lane Quilts, which provide no indication of any license agreement or royalty payment to Lone Star.

On April 2, 2017, Lone Star claims that Liljenquist disassociated from the partnership by sending an email to Owen. In the email, Liljenquist stated that the business was too much for her and she proposed that Owen buy her out for $50,000.00 or they shut down the company. Liljenquist and Owen unsuccessfully negotiated how to part ways and both partners appear to have taken actions to further their own interests. Lone Star claims that Liljenquist cancelled the partnership credit cards, failed to deposit checks, depleted checking accounts, ceased selling products, refused to send samples or product to Owen, refused to fulfill orders, and did not work in the partnership from April 2017 to February 2018.

Owen alleges that she learned in April 2017 that Liljenquist had set up Abbey Lane Quilts

LLC in December of 2016 without her knowledge. To avoid prejudicing Liljenquist's rights, Owen made the 2017 yearly filing for Abbey Lane Quilts LLC. However, Owen claims that the LLC is a shell entity that has never been capitalized or operated.

After the April 2017 email, Owen notified customers and suppliers to send future communications to her address. Owen established a new business called 2 Abbey Lane, LLC, as a Utah limited liability company. Owen states that Lone Star continued to develop new quilt designs. Lone Star licensed 2 Abbey Lane LLC to start selling patterns based on the new designs.

On August 25, 2017, Liljenquist and Abbey Lane Quilts LLC filed a lawsuit in the Second District Court in and for Weber County, Utah, seeking dissolution of Abbey Lane Quilts LLC and alleging claims against Owen and 2 Abbey Lane for intentional interference with economic relations, conversion, unfair competition, trademark infringement, misappropriation of trade secrets, unjust enrichment, breach of duty of loyalty and care, civil conspiracy. Liljenquist and Alley Lane Quilts also sought injunctive relief.

On March 12, 2018, the Utah state court granted a preliminary injunction in favor of Liljenquist and Abbey Lane Quilts LLC which appeared to be an attempt to restore the status quo that existed between the parties when the dispute arose in April 2017. Although there were no copyright claims asserted in the state court action, the state court preliminary injunction bars Owen and 2 Abbey Lane from, among other things, selling designs that had been sold by Abbey Lane Quilts Partnership and Owens designs developed after Owen and Liljenquist had parted ways in April 2017 on the grounds of alleged misappropriation of trade secrets and unfair competition.

Approximately three months later, Lone Star registered a copyright in one of the quilting

4

designs.  And, on June 28, 2018, filed the present lawsuit, alleging copyright violations.  Four months later, on October 2, 2018, Lone Star filed the current motion for preliminary injunction.

## LEGAL ANALYSIS

### Lone Star's Motion for Temporary Restraining Order and Preliminary Injunction

Lone Star moves for a preliminary injunction against the Utah State Second District Court In and For Weber County for allegedly violating 28 U.S.C. § 1338(a) and improperly interfering with Lone Star's rights under the Copyright Act.

**A. Anti-Injunction Act**

"[A]ny analysis of the power of a federal court to enjoin a state court proceeding must begin with the Anti-Injunction Act ("the Act") codified at 28 U.S.C. § 2283." *Wells Dairy Inc. v. Estate of Richardson*, 89 F. Supp. 2d 1042, 1061 (N.D. Iowa 2000).  The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay state court proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate it judgments."  28 U.S.C. § 2283 (originally passed in 1793, amended in 1874, and amended to its present wording in 1948).

While the three statutory exceptions appear like they could have significant breadth, the Supreme Court has purposely kept them extremely narrow.  The exceptions "are narrow and are not [to] be enlarged by loose statutory construction." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011).  It is "clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation." *Amalgamated Clothing Workers of Am. v. Richman Bros. Co.*, 348 U.S. 511, 514 (1955).  Any doubt as to the application of the Act's three exceptions must "be resolved in favor of permitting the state court to proceed." *Atl. Coast Line R.R. v. Locomotive Eng'rs*, 398 U.S. 281, 282 (1970).

The Court has explained that the Anti-Injunction Act is a "necessary concomitant of . . . a dual system of federal and state courts" and "a pillar of federalism reflecting the fundamental independence of the states and their courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). The Supreme Court has "expressly rejected the view that the anti-injunction statute merely states a flexible doctrine of comity, and made clear that the statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions." *Mitchum v. Foster*, 407 U.S. 225, 228-29 (1972). The Supreme Court has admonished that "proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Atlantic Coast Line*, 398 U.S. at 287.

### 1. "Expressly Authorizes" Exception

The first exception permits a federal court to enjoin a state court when it is expressly authorized by a federal statute. Plaintiff argues that this court can enjoin the state court because a state court lacks jurisdiction over copyright matters and is expressly barred from addressing such issues under 28 U.S.C. § 1338(a). Section 1338(a) states that "district courts shall have original jurisdiction over any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." Moreover, the Copyright Act preempts any state law protections. 17 U.S.C. § 301.

However, the first exception to the Anti-Injunction Act "is not triggered simply by the fact that a state proceeding involves a question of federal law." *Employers Resource Mgmt.*, 65 F.3d 1126, 1130 (4th Cir. 1995). "Rather when a state proceeding presents a federal issue, even a

6

preemption issue, the proper course is to seek resolution of that issue by the state court." *Chick Kam Choo*, 486 U.S. at 149-50.

While the Copyright Act provides a federal system of protection for copyrights, it does not expressly authorize an injunction against a state court. A federal law need not contain an express reference to the Anti-Injunction Act in order to qualify under the expressly authorized exception. *Mitchum,* 407 U.S. at 237. Rather, the *Mitchum* Court explained that the pertinent test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238. Although 42 U.S.C. § 1983, which was the statute at issue in *Mitchum*, did not have express language authorizing a federal court to enjoin a state court, it had a detailed legislative history demonstrating an intent of interposing the federal courts between improper state action and the people when state courts were being used to harass and injure individuals. *Employers Resource Mgmt.*, 65 F.3d at 1131. Other federal acts designed to unify the nation's laws in certain areas, even those that fully pre-empt state law, have not been found to fall under the exception because they do not have the kind of federal/state history involved in the civil rights arena. *Id.*

In addition, federal laws that allow for injunctions as part of their enforcement scheme are not enough. The provision of the Clayton Act authorizing injunctions to prevent violation of the antitrust laws was found not to be an express exception to the Anti-Injunction Act. *Vendo Co. v. Lektro Vend Corp.*, 97 S. Ct. 2881, 2891-92 (1977). In *Vendo*, the Court looked at whether the provisions of the Clayton Act were intended to be an exception to the Anti-Injunction Act, not just whether the statute was meant to protect federal rights. *Id.* at 2887-88. In contrast to Section 1983, where "Congress clearly conceived that it was altering the relationship between the States

and the Nation with respect to the protection of federally created rights" because state instrumentalities could not protect those rights, there was no similar legislative history in connection with the Clayton Act. *Id.* at 2889. The Court explained that the "importance of the federal policy to be protected by the injunction is not the focus of the inquiry" because, "[p]resumptively, all federal policies enacted into law by Congress are important." *Id.* at 2890. Also, if federal statutes could be given their "'intended scope' only by allowing such injunctions, the § 2283 [the Anti-Injunction Act] would be completely eviscerated since the ultimate logic of this position can mean no less than that virtually all federal statutes authorizing injunctive relief are exceptions." *Id.* The Court refused to "read the 'intended scope' language as rendering this specific and longstanding statutory provision inoperative simply because important federal policies are fostered by the statute under which the injunction is sought." *Id.* at 2891. 'Given the clear prohibition of § 2283, the courts will not sit to balance and weigh the importance of various federal policies in seeking to determine which are sufficiently important to override historical concepts of federalism underlying § 2283." *Id.*

In this case, there is no copyright claim pending before the state court. However, Lone Star alleges that its copyrights are being affected by the state court's injunction. At the time that the state court entered its preliminary injunction, Lone Star had not registered its copyright and there was no indication that copyright issues were raised before the state court. Lone Star, however, alleges that the parties had a subsequent hearing before the state court in September and the state court orally revised its preliminary injunction and asked Defendants to provide a new version of the preliminary injunction in writing. Defendants have not yet submitted a new version of the preliminary injunction so the exact contours of the state court's revised injunction is unclear. Lone Star, however, argues that the state court improperly found that Abbey Lane

8

Quilts Partnership has an oral exclusive license to the quilting designs from Owen and Liljenquist, who are potentially joint authors of the quilting designs.

Defendants point out that issues regarding the transfer of copyright licenses are state law issues. In *Borden v. Katzman*, 881 F.2d 1035 (11th Cir. 1989), the court found that there was no federal jurisdiction because "a dispute over the terms or the enforceability of a contract to transfer the exclusive rights comprised in a copyright is wholly a state law matter. Contract questions that depend upon common law or equitable principles belong in state court even if they involve copyrights." *Id.* at 1038.

Lone Star asserts that while the transfer of a nonexclusive license may be a matter of state law, the oral transfer of an exclusive license must be interpreted under § 204(a) of the Copyright Act and, thus, is a federal question. *Sullivan v. Naturalis, Inc.*, 5 F.3d 1410, 1413 (11th Cir. 1983). However, Lone Star's argument only asserts that there is federal jurisdiction. The argument does not demonstrate an express authorization to enjoin a state court proceeding in this situation. The presence of federal jurisdiction is not enough to qualify for the exception to the Anti-Injunction Act and neither is federal preemption. Lone Star has not cited to, and the court has not found, a case in which a court has found the Copyright Act to fall within the expressly authorized exception to the Anti-Injunction Act. Moreover, the court is unclear as to the parameters or precise nature of the state court's renewed preliminary injunction and its actual affect on the copyrights at issue in this case. The state court's first preliminary injunction was based on trade secrets and unfair competition grounds, not copyright, and it is unclear to this court how the injunction has changed. However, such parallel actions are allowed in our system of federalism in the absence of a clear exception. Given the Supreme Court's dictates to resolve all doubts in favor of allowing the state court to proceed, the court concludes that Lone Star has

not demonstrated that the Copyright Act expressly authorizes this court to enjoin the state court in these circumstances.

### 2. "In Aid of Its Jurisdiction" Exception

Under the second exception to the Anti-Injunction Act, which allows a court to enjoin a state court "in aid of its jurisdiction," "it is not enough that the requested injunction is related to that jurisdiction." *Atlantic Coast Line*, 398 U.S. at 295. "Ordinarily, a federal court may issue an injunction 'in aid of its jurisdiction' in only two circumstances: (1) the district court has exclusive jurisdiction over the action because it had been removed from state court; or (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action." *In re Bayshore Trucks Sales, Inc.*, 471 F.3d 1233, 1251 (11th Cir. 2006). However, if the state court was the first to acquire subject matter jurisdiction over a res in an action *in rem*, the federal court is precluded from exercising its jurisdiction over the same *res*.

In this case, the Utah state case is merely a parallel in personam action. "[I]t is well settled that the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action." *Wells' Dairy*, 89 F. Supp. 2d at 1064 (citing *Vendo Co.*, 433 U.S. at 642 ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court.")).

In *Amalgamated Clothing Workers*, the Court rejected the position that the Anti-Injunction Act "does not apply whenever the moving party in the District Court alleges that the state court is 'wholly without jurisdiction over the subject matter, having invaded a field pre-empted by Congress.'" 348 U.S. at 515. A federal court cannot "ignore the limitations of [the

Anti-Injunction Act] and enjoin state proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Choo*, 486 U.S. at 149 (1988). The "necessary in aid of its jurisdiction" is a narrow exception that "applies only in aid of a court's exclusive jurisdiction over a particular case, not over a general class of cases." *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 407 (3d Cir. 1992). Accordingly, the court concludes that this second exception does not provide a basis for this court to enjoin the state court proceedings.

The final exception under the Anti-Injunction clearly does not apply because this court has not issued a judgment. In addition, the court cannot enjoin the defendants from enforcing the injunction as an end run around the Anti-Injunction Act's prohibitions against enjoining a state court. *Atlantic Coast Line*, 398 U.S. at 287 ("[T]he prohibition of § 2283 cannot be evaded by addressing the order to the parties."). Therefore, the court concludes that none of the exceptions to the Anti-Injunction Act apply in this case and this court is precluded under the Anti-Injunction from enjoining the state court.

## B. Preliminary Injunction Factors

Even if the court were in a position to consider the injunction, Lone Star would need to meet the preliminary injunction standard. A preliminary injunction is an "extraordinary and drastic remedy." *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). Preliminary injunctive relief is appropriate if the moving party establishes: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Because a

preliminary injunction is an extraordinary remedy, the "right to relief must be clear and unequivocal." *SCFC LLC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).[3]

Plaintiff refers to the more lenient "fair ground for litigation" preliminary injunction standard, but the Tenth Circuit abandoned that standard in *Dine Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016) (prior modified test is inconsistent with the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)). "Under *Winter's* rationale, any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id.*

**1. Likelihood of Success on the Merits**

Lone Star contends that the state court's injunction is defective to the extent that it prohibits Owen, who is the sole member/manager of Lone Star, and Lone Star from exercising one or more of the exclusive rights provided under the Copyright Act. However, there are significant factual disputes regarding the authorship of the copyrights and the license rights of the parties and entities involved. The court cannot conclude that Lone Star has clearly and unequivocally demonstrated a likelihood of success on the merits of its copyright claims.

Moreover, to the extent that Lone Star's motion for preliminary injunction asks the court to enjoin the state court, Lone Star has not demonstrated a likelihood of success on the merits with respect to the Anti-Injunction Act, as explained above.

---

[3] In the Tenth Circuit, mandatory preliminary injunctions are disfavored and "'must be more closely scrutinized to assure that the exigencies of that case support the granting of a remedy that is extraordinary even in the normal course.'" *Schrier v. University of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004)). The court has some concerns that the requested injunction could be a mandatory injunction, but the parties did not brief the issue. Because the court concludes that Lone Star has failed to meet the regular standard, the court does not address the issue.

## 2. Irreparable Harm

Lone Star asserts that it is suffering irreparable injury because the state court is improperly interfering with its rights under 17 U.S.C. § 106. However, Owen did not appeal the state court's preliminary injunction and thus failed to exercise the remedies for relief provided to her in the state court system. Lone Star claims that it was and is affected by the state court injunction, but it apparently did not seek leave to intervene in the state court action. To the extent that Lone Star believes that only a federal court can hear its copyright defenses to Defendants' state court lawsuit, Owen failed to remove the case to federal court despite the existence of a federal Lanham Act claim. The court cannot conclude that Lone Star is irreparably harmed when it has not taken advantage of the procedures and remedies available to it.

Rather than exercise the rights and remedies it had available to it, Owen and Lone Star lived with the state court injunction for over six months, from March until October. In addition, the dispute over copyright ownership appears to have existed since the parties parted ways in April 2017. "Absent a good explanation . . . a substantial period of delay . . . militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *High Tech Med. Instrumentation v. New Image*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). The Tenth Circuit has found that delay in bringing a motion for emergency relief is evidence that there is, in fact, no irreparable injury. *See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("'Although plaintiff contends that it will be irreparably harmed should defendants' activities not be enjoined, it has waited nearly a year before seeking any relief. Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'") (citations omitted); *Kansas Health Care Assoc., Inc. v. Kansas Dep't of Soc. & Rehabilitation Servs.*, 31

13

F.3d 1536, 1544 (10th Cir.1994) ("As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury.") With the delay present in this case, the court cannot conclude that this factor weighs in Plaintiff's favor.

Lone Star also acknowledged at the hearing on this motion that given the state court's new oral revision to the preliminary injunction which remains to be finalized in writing, there is still the possibility of appealing the revised preliminary injunction in the state court system. Therefore, Lone Star continues to have the ability to redress the state court injunction in the state court system. Accordingly, the court concludes that Lone Star has not demonstrated irreparable harm.

Because the court has determined that Plaintiff has not met its burden of showing a likelihood of success on the merits or irreparable harm, the court concludes it need not examine the remaining factors for preliminary injunctive relief. Therefore, the court denies Lone Star's motion for a preliminary injunction is denied.

## CONCLUSION

Based on the above reasoning, Lone Star's Motion for TRO/Preliminary Injunction Barring the Utah State District Court In and For Weber County, Utah From Interfering With the Copyrights of Plaintiff Lone Star Promotions, LLC [Docket No. 24] is DENIED.

DATED this 6th day of November, 2018.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge